**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| LORENZO J. BRENT, | ) | No. 06 B 6197 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

**<u>MEMORANDUM OPINION</u>**

Timothy K. Liou is one of the most active consumer bankruptcy attorneys in this district,

filing nearly 8,000 cases from mid-1996 to the present.  More than once, though, Liou's efforts

to get paid have drawn the court's attention and resulted in sanctions.  Now he faces sanctions

again.  Earlier this year, seven bankruptcy judges issued orders asserting that Liou had filed false

applications for compensation as counsel for the debtors in 317 pending chapter 13 cases.  The

applications were false, the orders said, because in them Liou represented that he had entered

into the court's form retention agreement with the debtor, entitling him to receive a fixed fee of

$3,500 (a "flat" or "no look" fee), when in fact he had modified the agreement to charge

additional fees.  The orders required him to show cause why he should not be sanctioned for

violating Bankruptcy Rule 9011(b).

The Rule 9011 proceedings were consolidated for hearing before the undersigned judge.

Based on the evidence adduced at the hearing and on the court's own records in the 317 chapter

13 cases, the court makes the following findings of fact and conclusions of law pursuant to

Bankruptcy Rules 7052 and 9014(c).  For the reasons discussed below, Liou will be sanctioned

for his multiple misrepresentations to the court in violation of Rule 9011(b).

### 1. Jurisdiction

The court has subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *See In re Tbyrd Enters. LLC*, 354 F. App'x 837, 839 (5th Cir. 2009), *cert. denied*, ___ U.S. ___, 131 S. Ct. 323 (2010); *In re Letourneau*, 422 B.R. 132, 135 (Bankr. N.D. Ill. 2010).

### 2. Background

### a. Attorney Compensation in Chapter 13

Compensation of debtors' attorneys is a matter critical to "the integrity of the bankruptcy process." *In re Nelson*, 424 B.R. 361, 363 (Bankr. N.D. Ill. 2009); *see also In re Kindhart*, 160 F.3d 1176, 1177 (7th Cir. 1998) (calling the question of attorney's fees "an important matter not only to attorneys, but also to the courts and the public"). Because of its importance, the subject is treated extensively in both the Bankruptcy Code and Rules. Section 329(a) of the Code requires every attorney for a debtor to file "a statement of the compensation paid or agreed to be paid . . . for services rendered . . . in contemplation of or in connection with the case . . . ." 11 U.S.C. § 329(a). Rule 2016(b) establishes when a statement disclosing the compensation – often called a "Rule 2016(b) statement" – must be filed. Fed. R. Bankr. P. 2016(b). All compensation must be disclosed, whether the attorney will be compensated from the estate or from some other source. *In re Redding*, 263 B.R. 874, 878 (B.A.P. 8th Cir. 2001); *In re Jackson*, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009).

Section 330 of the Code requires court approval of any compensation of a chapter 13 debtor's attorney from the debtor's estate. 11 U.S.C. § 330(a)(4)(B); *In re Robinson*, 368 B.R. 492, 498 (Bankr. E.D. Va. 2007). To receive approval, Rule 2016(a) requires an attorney to file

"an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."  Fed. R. Bankr. P. 2016(a).  In chapter 13 cases, the court may then award "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case . . . ."  11 U.S.C. § 330(a)(4)(B).  Typically, attorneys are compensated under section 330(a) using the "lodestar method," under which a reasonable number of hours is multiplied by a reasonable hourly rate.  *In re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006).

But the lodestar method is not required, *id.*, and bankruptcy courts have increasingly adopted systems under which attorneys for chapter 13 debtors can be awarded a presumptively reasonable standard fee for each case.  *See In re Williams*, 357 B.R. 434, 439 n.3 (B.A.P. 6th Cir. 2007) (noting that "[a] growing number of bankruptcy courts" have implemented these fees); *In re Debtor's Attorney Fees in Chapter 13 Cases*, 374 B.R. 903, 904-05 (Bankr. M.D. Fla. 2007) (same).  These flat fees are sometimes called "no look" fees because they are awarded without the kind of detailed application and itemization of services that Rule 2016(a) would otherwise demand.  *Williams*, 357 B.R. at 439 n.3.  Often the flat fee is contingent on the execution of a "Rights and Responsibilities" agreement between the attorney and the debtor detailing the obligations of each.  *In re Smith*, 331 B.R. 622, 629-30 (Bankr. M.D. Pa. 2005).  As such, the flat fee represents a kind of agreement not only with the debtor but with the court:  in exchange for the attorney's commitment to perform specified legal services for the debtor, the court awards a flat fee and dispenses with the usual application.  *Id.* at 629.

By simplifying the compensation process in a large number of fairly routine cases, the adoption of flat or "no look" fees has proven immensely advantageous to both the courts and bar.  Flat fees benefit the bar in two ways:  they save attorney time otherwise devoted to maintaining

-3-

extensive records and preparing elaborate fee applications in small cases, and they encourage the

efficient practice of law. *Eliapo*, 468 F.3d at 599. Flat fees benefit courts because they save

judicial time "that a busy bankruptcy court would otherwise be required to spend dealing with

detailed fee applications." *Id.*; *see also In re Cahill*, 428 F.3d 536, 540-41 (5th Cir. 2005).

Indeed, the large volume of chapter 13 cases makes full judicial review of a detailed fee

application in each case not only "administratively burdensome," *Eliapo*, 468 F.3d at 599

(internal quotation omitted), but, as one noted authority has suggested, "almost inconceivable,"

Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th ed., § 294.1 at ¶ 27, sec. rev.

June 17, 2004, www.Ch13online.com.

Flat fee systems are flexible enough, however, to take into account that unusual animal,

the complex or involved chapter 13 case. When fees above the flat fee are warranted, either for

services beyond those spelled out in the Rights and Responsibilities agreement or for

extraordinary work, attorneys are generally permitted to petition for additional compensation.

*See, e.g., Robinson*, 368 B.R. at 499 (permitting additional compensation for services "not

reasonably anticipated"). And, of course, no attorney is ever required to participate in the flat

fee system; a traditional fee application with a detailed itemization of services can always be

filed. *Eliapo*, 468 F.3d at 600; *In re Wesseldine*, 434 B.R. 31, 37-38 (Bankr. N.D.N.Y. 2010);

*Robinson*, 368 B.R. at 499.

### b. Flat Fees in the Northern District of Illinois

In 1998, the Seventh Circuit approved the use of a presumptively reasonable flat fee in

chapter 7 consumer cases. *See In re Geraci*, 138 F.3d 314, 321 (7th Cir. 1998). Later that year,

the Seventh Circuit reached the same conclusion about flat fees in chapter 13 cases. *See*

*Kindhart*, 160 F.3d at 1178; *see also* Lundin & Brown, *supra*, § 294.1 at ¶ 41 (noting that flat

fees are permissible in this circuit).  In the wake of *Geraci* and *Kindhart*, judges from this court

met with the standing chapter 13 trustees, the U.S. Trustee, and members of the bar to discuss the

development of a flat fee arrangement for the Northern District of Illinois.  *See In re Andreas*,

373 B.R. 864, 871 (Bankr. N.D. Ill. 2007) (describing the process).

In November 2002, the bankruptcy court issued a standing order establishing a flat fee

arrangement in chapter 13 cases.  *See* Standing Order dated Nov. 26, 2002.  The order recited

that the court had adopted a "Rights and Responsibilities Agreement between Chapter 13

Debtors and Their Attorneys," called the "Model Retention Agreement" ("MRA") for short,

along with a form application for compensation.  The MRA set forth in detail the specific

responsibilities of the debtor and attorney both before and after a case is filed.  *See* Local Form

23c.  Nor were the responsibilities of the attorney limited to those specified.  Paragraph 16

contained a catch-all obligating the attorney to "[p]rovide any other legal services necessary for

the administration of the case."  *Id.*

The MRA also addressed attorney compensation and offered two options.  One was a flat

fee through confirmation, with post-confirmation work compensated through a separate

application accompanied by an itemization of services.  *Id.*  The other was a flat fee through case

closing.  Both options allowed the attorney to apply for compensation in an amount greater than

the flat fee "in extraordinary circumstances," but before a higher fee could be awarded the

attorney had to submit an application with an itemization of services.  *Id.*  The MRA added that

"[t]he attorney may receive a retainer or other payment before filing the case, but may not

receive fees directly from the debtor after the filing of the case."  *Id.*

The standing order provided that requests for compensation under section 330(a)(4)(B)

would be allowed "without submission of an itemization of services rendered" if the attorney

met two conditions.  First, the attorney had to file the form application; the application had to

state that the attorney and debtor had entered into the MRA (the form had a check box for this

purpose, *see* Local Form No. 23, rev. Nov. 25, 2002); and the application had to indicate which

compensation option had been selected.  Second, the attorney had to request either a flat fee of

no more than $2,200 for services through plan confirmation or a flat fee of no more than $2,700

for services "through the entire case."  Standing Order dated Nov. 26, 2002.

Since its adoption, the flat fee arrangement and accompanying forms have been modified

from time to time.[1]  In 2005, the court raised the flat fees to $2,500 for services through

confirmation and $3,500 for services though the entire case.  *See* Standing Order dated Sept. 28,

2005.  In 2006, the court adopted a form compensation order that corresponded to the MRA and

form fee application, providing blanks where fee amounts could be listed either for "legal

services through confirmation of the plan" or "legal services through conclusion of the case."

*See* Form Order No. 23b, rev. Mar. 27, 2006.  In 2007, the court modified the MRA to eliminate

the flat fee through confirmation and entered a general order allowing a single flat fee of $3,500

for services "through the completion of the case."  *See* Gen. Order dated Apr. 26, 2007; *see also*

*In re Mortakis*, 405 B.R. 293, 297-98 (Bankr. N.D. Ill. 2009) (describing the modification and

the reasons for it).  The following year, the court's local rules were amended to include the flat

fee arrangement.  *See* L.R. 5082-2 (Dec. 1, 2008).

In March 2011, the court changed the name of the MRA to "Court-Approved Retention

Agreement."  The court also entered a General Order requiring every agreement between a

---

[1]        As the bar began to use the system, *see In re Kowalski*, 402 B.R. 843, 849 (Bankr.
N.D. Ill. 2009) (noting that "[m]ost attorneys who represent Chapter 13 debtors in this district
have shifted to the flat fee arrangement"), modifications were necessary to address problems that
arose as well as changes in the economics of consumer bankruptcy practice.

debtor and the debtor's attorney to be in writing and attached to the Rule 2016(b) statement. *See* General Order No. 11-2 dated Mar. 16, 2011. The General Order went on to repeat what had been the case since 2002 – that flat fees as defined in the local rule would be awarded only if the debtor and attorney had entered into the Court-Approved Retention Agreement – and then declared: "Flat Fees will not be awarded if the Court-Approved Retention Agreement has been altered in any way or if the debtor and the attorney have entered into any agreement other than the Court-Approved Retention Agreement." *Id.*[2/]

### c. The Show Cause Orders

In May 2010, attorney Timothy Liou filed a chapter 13 bankruptcy case, No. 10 B 23825, for debtor Karen T. Carstens. Shortly after filing the case, Liou filed a form fee application, Form No. 23. In the portion of the application entitled "Use of Model Retention Agreement," Liou checked the box indicating: "The attorney and the debtor(s) have entered into the Court's Model Retention Agreement." (Dkt. No. 14).

Some months later, chapter 13 trustee Glenn Stearns objected to Liou's application because the MRA between Liou and the debtor (a copy of which Liou had filed on the petition date (*see* Dkt. No. 9)) attached an "addendum" that prescribed fees in addition to the flat fee to which Liou was entitled. (Dkt. No. 49). Stearns added that after he complained to Liou about the addendum, Liou filed what purported to be an amended MRA without the addendum that was merely an altered version of the original: Liou had written the word "amended" on the first page and crossed out the phrase "see attached addendum," but the "amended" MRA still bore the original date and signatures. (*Id.*; *see* Dkt. No. 42). Stearns asserted that Liou's use of the

---

[2/]    The court has proposed to the district court an amendment to Local Rule 5082-2 that would incorporate the provisions of General Order No. 11-2.

addendum was an "attempt to deceive the court and an attempt to receive more than $3,500" from Carstens. (Dkt. No. 49). Stearns asked for an examination of Liou's fees pursuant to 11 U.S.C. § 329.

Rather than examining the fees, in December 2010 the court issued an order reciting these facts and requiring Liou to appear and show cause why he should not be sanctioned under Bankruptcy Rule 9011(b)(3) for making false statements of fact in papers filed with the court. (Dkt. No. 54). Liou appeared on the required date, and the court set the matter for an evidentiary hearing. (Dkt. No. 59).

Before the hearing could take place, another chapter 13 case with similar problems came to light. In August 2010, Liou filed a chapter 13 case, No. 10 B 37403, for debtor Michael P. Iniquez. Again, Liou filed a form fee application shortly after the case was commenced. Again, Liou checked the box indicating: "The attorney and the debtor(s) have entered into the Court's Model Retention Agreement." (Dkt. No. 17). In fact, Liou had entered into the MRA with the same attached addendum that purported to assess fees beyond the $3,500 flat fee. (Dkt. No. 8).

As in the *Carstens* case, the court issued an order reciting these facts and requiring Liou to appear and show cause why he should not be sanctioned under Rule 9011(b)(3) for making false statements of fact in papers filed with the court. (Dkt. No. 36). Because the problem no longer appeared to be an isolated one, Liou was also ordered to file a list of all chapter 13 cases pending in the district in which he was counsel for the debtor and in which "a Model Retention Agreement between Liou and the debtor attaches an addendum that alters the compensation arrangement in any respect." (*Id.*). The hearing date in *Carstens* was vacated.

In March 2011, Liou filed the required list. The list disclosed 471 pending chapter 13 cases filed between late 2006 and late 2010 in which Liou had not only entered into an MRA

-8-

with the debtor but attached to the MRA an addendum that affected his compensation. Seven of the nine judges before whom the cases were pending then issued 321 show cause orders requiring Liou to appear before the undersigned judge and show cause why he should not be sanctioned for violating Rule 9011.[3/] Four of those orders were later vacated.[4/]

The matters were consolidated for briefing, and an evidentiary hearing was set. Liou filed a written response to the orders. U.S. Trustee Patrick S. Layng and chapter 13 trustees Marilyn O. Marshall and Tom Vaughn filed replies supporting the imposition of sanctions.

### d. The Show Cause Hearing

Liou called the only two witnesses who testified at the hearing: Liou himself and Thomas P. Sukowicz, an attorney at Hinshaw & Culbertson LLP.

### i. Liou

Liou testified that he is a consumer bankruptcy lawyer and has focused his practice in that area since late 1996 or early 1997. (Tr. at 9). Liou started entering into the MRA with clients when it was first introduced near the end of 2002. (*Id.* at 11-12). In roughly 2004, Liou

---

[3/]    The 317 show cause orders required Liou to appear before a single judge in the interest of economy. Only seven of the ten bankruptcy judges in the district issued the show cause orders because the chief judge at the time had no chapter 13 calendar, *see* Internal Operating Procedure 3(B); Administrative Order No. 07-07, and two judges elected to retain control over any Rule 9011 proceedings arising out of Liou's conduct.

[4/]    In four cases, it was later determined that either Liou's fee applications had not violated Rule 9011 or the violation was de minimis. In two cases, Liou filed no fee applications because the fees had been paid in full prepetition. *See Jackson*, 401 B.R. at 339 n.4 (explaining that an application is unnecessary in this circumstance). In the third, the fees had been paid in full prepetition, and the fee application Liou filed was unnecessary. *See id.* In the fourth, he neglected to check the relevant box on the fee application and so made no misrepresentation. The show cause orders in the four cases have been vacated. The names and docket numbers of the remaining 317 cases with which this ruling is concerned are listed in an appendix to this opinion.

also began using what he called "my addendum."  (*Id.* at 10, 12).  He came up with the

addendum because it "spoke to issues that the model retention agreement did not, very important

issues."  (*Id.* at 12; *see also id.* at 137).  The idea, he said, was "to make fuller disclosure" to

prospective clients about the kinds of charges for which they would be liable.  (*Id.* at 13).

The content of the addendum was similar if not identical in all the cases.  (*Id.* at 98-99).

The document was titled either "Addendum to Model Retention Agreement" or "Addendum to

Advance Payment Retainer Model Retention Agreement" (*id.* at 98) and began with this recital:

> This advance payment retainer agreement has been created to
> benefit Client because of potential claims of Client's creditors.
> Funds paid to Attorney are non-refundable to the extent earned and
> will be treated as income to the extent earned upon receipt.  Client
> retains no legal or equitable interest in the retainer and understands
> that fees paid under this agreement are for Attorney to be available
> to provide specific legal services when needed for the term of the
> plan.

(Ex. B to Resp. Ex. 30).

The addendum went on to describe six charges for which the debtor would be liable:

> • "[L]ate fees of 18 percent per annum from the date below plus
> reasonable Attorneys fees and court costs" for "any balance due
> Attorney which is overdue 30 days or more . . . ."

> • A fee of "$65.00 . . . for processing each NSF check" presented
> for the payment of attorney's fees.

> • Attorney's fees at Liou's standard hourly rate "for prospective
> work to cover necessary post-termination work such as drafting
> itemizations of work performed, collection/skip-tracing, etc.,"
> along with "all costs Attorney incurs on behalf of Client . . . ."

> • Attorney's fees at "the hourly rate of $295.00 for services not
> specified in the Model Retention Agreement . . . ."

> • A "'convenience fee' of 5%" if the debtor elected to pay a
> portion of the attorney's fees and costs "by debit card from a
> checking account or by someone else's credit card . . . ."

-10-

> • The filing fee and attorney's fees for "two hours of Attorney time
> . . . to draft a motion to reopen the bankruptcy case" if the court
> closed the case without discharge because the debtor had not filed
> either the credit counseling certificate required under section
> 109(h) of the Code or the personal financial management
> certificate required under sections 111 and 1328(g)(1).

(*Id.*).  The addendum also stated that it was "retroactive to cover all legal services described in

the Model Retention Agreement that may have been provided before its signing, including, but

not limited to, telephone conference(s) and drafting solicitation letter(s) informing of bankruptcy

[*sic*] as a legal option."  (*Id.*).

Liou asserted that the charges in the addendum were rarely imposed and with limited

exceptions did not apply to bankruptcy cases.  The late fee, he said, was "[t]ypically" charged

after a case has been dismissed.  (Tr. at 100).  The charge for checks returned for insufficient

funds was also "typically" charged when someone hired him, tendered a bad check, and then

terminated the representation.  (*Id.* at 101-02, 105).  The attorney's fees for "prospective work to

cover necessary post-termination work" referred to work after the client fired Liou and he

incurred "collection costs in state court."  (*Id.* at 106-07).  The attorney's fees provision

specifying the $295 hourly rate applied to work that had nothing to do with the bankruptcy case,

perhaps drafting a will or handling a real estate sale.  (*Id.* at 107-08).  The 5% processing fee for

debit and third party credit cards was simply an effort to recover the fees Liou's office was

charged.  (*Id.* at 108-10).  The fees for reopening the bankruptcy case, finally, were fees charged

only "after the case [was] closed" and so, Liou contended, were outside the MRA.  (*Id.* at 111-

13; *see also id.* at 152).

A review of the dockets in the 317 cases at issue shows that more often than not the

MRA between Liou and the debtor referred specifically to the addendum.[5]  In cases where the

MRA required the attorney to include an explanation why any retainer would be treated as an

advance payment retainer, Liou wrote or typed:  "See attached addendum."  (*See, e.g.,* Resp.

Exs. 1, 2, 6-8).  This notation appeared in roughly 70% of the cases where an MRA was actually

filed.[6]  More often than not, the MRA and the addendum bore the same date and so appear to

have been executed at the same time.  In 95% of the cases where Liou filed the MRA and both

the MRA and addendum had dates (in some instances no dates appeared), the dates on the two

documents were the same.

Liou used the addendum in the vast majority of the cases he filed, somewhere between

97% and 99%.  (Tr. at 43, 47, 63, 89).  His use of the addendum, however, was less than

obvious.  A review of the dockets reveals that the Rule 2016(b) statements in all 317 cases

committed Liou to providing services specified in "the attached Attorney Fee Agreement" (*see,*

*e.g.,* Resp. Ex. 1), but in a third of the cases no agreement was attached.  In fact, Liou failed to

attach the MRA and addendum to his Rule 2016(b) statements in any of the 2006, 2007, and

2008 cases at issue; he did not begin attaching the documents until mid-2009.  (*See* Tr. at 18).

And although Liou did  begin attaching the MRA and addendum to his Rule 2016(b) statements,

rarely if ever did he attach them to his fee applications.  Only five of the fee applications in cases

---

[5]        The court can take judicial notice of matters in its own records.  *Griffin v. United States*, 109 F.3d 1217, 1218 n.1 (7th Cir. 1997); *Brown v. Job (In re Polo Builders, Inc.)*, 433 B.R. 700, 706 n.6 (Bankr. N.D. Ill. 2010).

[6]        Liou filed a full copy of the MRA in only 217 of the cases.  In virtually all of the cases where the MRA was filed, he employed the version requiring an explanation why any retainer should be considered an advance payment retainer.  (An earlier version of the MRA predating the Illinois Supreme Court's approval of advance payment retainers had required no explanation.)  About 30% of the time, Liou checked the box on the MRA indicating that his retainer should be considered an advance payment retainer but neglected to provide the required explanation.  (*See, e.g.,* Resp. Exs. 3, 4).

filed from 2006 through mid-2010 had an MRA attached, and none mentioned or attached the addendum.

Despite his use of the addendum, Liou filed form fee applications in all 317 cases and in every application checked the box representing:  "The attorney and the debtor(s) have entered into the Court's Model Retention Agreement."  In 98% of the cases, Liou was awarded compensation consisting of the flat fee for handling the entire case.[7/]

Beginning in January 2011, Liou took steps to amend the MRA in some of the cases filed during the latter half of 2010 and still pending.  (*See id.* at 140).  A review of the dockets discloses that in thirty-three 2010 cases, he filed an amended MRA with no addendum attached. In ten of those cases, however, the amendments were unilateral:  Liou simply wrote in the word "amended" on the first page and crossed out the phrase "see attached addendum" on a later page. Neither Liou nor the debtor executed the "amended" MRAs which bore the original dates and signatures.  (In three of the ten cases, Liou later filed genuine amended MRAs with new dates and signatures; in the other seven, he did not.)  In eighteen cases from 2010, Liou also withdrew his fee applications and filed new ones.  In fifteen, for some reason, he did not.  Following the issuance of General Order 11-2 in March 2011, Liou stopped using the addendum with the MRA.  (*Id.* at 118).

During his testimony, Liou said he was aware there was "a strict rule that the model retention agreement could not be altered, amended, doctored in any way."  (*Id.* at 26; *see also id.* at 62, 65).  Nevertheless, he maintained that the addendum did not alter or amend the MRA but was "its own separately standing agreement."  (*Id.* at 113).  Asked whether he believed it was

---

[7/]     Four applications were denied in 2011 because Liou's representations in the fee applications were false.  One application became moot when the case was dismissed.

misleading to state on the form fee application that he had entered into the MRA when in fact he

had entered into the MRA plus the addendum, Liou answered: "Absolutely not." (*Id.*).

### ii. Sukowicz

Sukowicz has represented attorneys in professional responsibility matters for twenty-five

years. (*Id.* at 56-58). From March to September 2010, he represented Liou in connection with

three investigations of the Illinois Attorney Registration & Disciplinary Commission (the

"ARDC") concerning what Sukowicz called "Mr. Liou's retainer agreements in the bankruptcy

court." (*Id.* at 59). The investigations resulted from complaints that debtors had made to the

ARDC. (*Id.* at 94). According to Sukowicz, the ARDC "was looking to see whether [Liou's]

fees were unreasonable and whether or not his retainer agreements were at all misleading to a

potential client or clients." (*Id.* at 59).

The agreements that interested the ARDC were not the MRAs but rather "customized fee

agreements" that Liou used in a small percentage of cases, agreements with which Liou had also

used the addendum. (*Id.* at 60-62, 64). The ARDC wanted Liou to propose a new customized

agreement on which ARDC staff could comment. (*Id.* at 61, 64). Nevertheless, as part of his

work Sukowicz obtained and reviewed a copy of the MRA, forwarding it to the ARDC along

with all of Liou's fee agreements so the ARDC "had a comprehensive picture of what [Liou] was

doing." (*Id.* at 60, 64-65, 74-75, 86).

Sukowicz testified that the ARDC raised no concern about Liou's use of the MRA with

the addendum. (*Id.* at 93). He also opined (without objection, although he was not called as an

expert and was offering a legal conclusion) that the addendum "merely provided additional

information to the clients" and "did not alter anything in the model retention agreement." (*Id.* at

68). Sukowicz admitted, however, that Liou had never requested advice about whether checking

-14-

the box on the form fee application indicating he had entered into the MRA with a debtor would

be truthful if he and the debtor had also executed the addendum.  (*Id.* at 78).[8/]  As a consequence,

perhaps, Sukowicz never discussed that question with the ARDC (*id.* at 90), nor did he ask the

ARDC whether in its view the addendum altered the MRA (*id.* at 91).  Sukowicz did not supply

the ARDC with a copy of the form fee application.  (*Id.* at 95-96).

Sukowicz acknowledged that he was not a bankruptcy lawyer and had never practiced in

the bankruptcy court.  (*Id.* at 77).  He conceded that he therefore had no real understanding of the

attorney compensation process in chapter 13 cases in this district:  he did not know why an

attorney might want to enter into the MRA with a debtor, what fees an attorney could receive if

he did enter into the MRA, what fees he could receive if he did not, or how the fee application

process might differ in the two instances.  (*Id.* at 77-78).

### 3.  Discussion

Liou violated Rule 9011(b) when he represented in 317 chapter 13 fee applications that

he had entered into the MRA with the debtor.  Those representations were false.  In fact, he had

altered the MRA by tacking on his "addendum," a contract amendment that allowed him to

charge fees beyond this district's flat fee.  Not only were Liou's representations false, they were

culpably false.  As an experienced consumer bankruptcy practitioner, Liou had to know the flat

fee was a ceiling, not a floor.  He had to know, too, that in modifying the MRA to get additional

fees without filing an additional application and itemization of services, he was breaching the

deal implicit in the flat fee arrangement.  As a result of his misrepresentations, Liou was awarded

---

[8/]       Sukowicz's specific testimony on this score was more convincing than Liou's
vague assertion that he retained Sukowicz in part to make sure the "use of the model retention
agreement with the addendum was acceptable to [the ARDC]."  (*Id.* at 24).

more than $1 million in fees without submitting an itemization of services, fees that otherwise

would have been denied.

### a. Rule 9011

Rule 9011 is the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil

Procedure. *In re Excello Press, Inc.*, 967 F.2d 1109, 1111 (7th Cir. 1992); *In re Collins*, 250

B.R. 645, 659 (Bankr. N.D. Ill. 2000).[9/]  Under Rule 9011(b), an attorney or unrepresented party

who presents to the bankruptcy court any "petition, pleading, written motion, or other paper"

makes four certifications to the court.  Three are certifications that the paper is not presented for

an improper purpose, the legal contentions have a basis in the law, and the denials of facts are

warranted by the evidence.  Fed. R. Bankr. P. 9011(b)(1)-(2), (4).  The fourth, relevant here, is a

certification that "the allegations and other factual contentions have evidentiary support or, if

specifically so identified, are likely to have evidentiary support after a reasonable opportunity for

further investigation or discovery."  Fed. R. Bankr. P. 9011(b)(3).

The certification in Rule 9011(b)(3) prohibits not only assertions of fact without

sufficient support but also outright misstatements of fact, whether about the merits or about the

case itself – so-called "litigation facts" of which counsel has first-hand knowledge.  "It does not

matter what the subject of a misstatement is.  It is sanctionable to mislead the court."  Gregory P.

Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(F) at 2-134 (4th ed. 2008); *see also*

Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures* 337

(3d ed. 2004) ("Misrepresentations of the facts may obviously result in sanctions."); *see, e.g.,*

---

[9/]      Because the rules are largely the same, case law under Rule 11 is helpful in the
interpretation of Rule 9011.  *Collins*, 250 B.R. at 659 (stating that "Rule 11 precedents may be
applied to make decisions under Rule 9011").

*Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 651 (7th Cir. 1992); *Samuels v. Wilder*, 906 F.2d

272, 276 (7th Cir. 1990).  Misleading omissions of fact are equally sanctionable.  Joseph, *supra*,

§ 9(G) at 2-137; Vairo, *supra* at 338; *see, e.g., In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir.

1988).

      To be sanctionable, a misstatement or omission must be more than an innocent mistake;

in making the misstatement or omission, the attorney must have been "culpably careless."

*Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005); *see also* Joseph,

*supra*, § 9(F) at 2-136.  The test for carelessness is objective rather than subjective.  To avoid

sanctions, then, the attorney's conduct must have been the conduct of a hypothetical reasonable

attorney.  *U.S. Bank Nat'l Ass'n v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005); *Ronco*,

838 F.2d at 217; *see, e.g., Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 824

(7th Cir. 2001).  An attorney's good faith belief that his statements were true or his omissions

not misleading is insufficient.  *See Senese*, 237 F.3d at 824 n.2.  As our court of appeals has

often observed, "an 'empty head but a pure heart is no defense.'"  *Sullivan-Moore* 406 F.3d at

470 (quoting *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994));

*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986).[10]

      In this case, both requirements for Rule 9011 sanctions – false statements of fact and

---

   [10]    Much of the case law under Rule 11(b)(3) addresses the reasonableness of the investigation the attorney undertook to determine whether his factual assertions had, or were likely to have, support.  *See, e.g., Samuels*, 906 F.2d at 274; *Ronco*, 838 F.2d at 217 (stating that sanctions are justified when an attorney fails "to make an objectively reasonable investigation of the facts").  When the attorney has personal knowledge of the facts, however, and is alleged to have misrepresented or omitted them, the nature of any investigation is irrelevant.  "To the extent that the presenter has personal, firsthand knowledge of salient facts, the Rule does not require that any pointless investigation be undertaken."  Joseph, *supra*, § 7(A)(1) at 2-92; *see also id.*, § 8(A)(5) at 2-108.  The sole question is the reasonableness of the attorney's conduct in misstating or omitting the facts.

culpable carelessness in making them – are satisfied.

### b. False Statements

The first requirement is satisfied because Liou made false statements of fact to the court – 317 of them to be precise.  In each of the 317 cases, Liou falsely stated in his fee application that he and the debtor had entered into the MRA.  By his own admission, those statements were false because Liou had not entered into the MRA.  He had instead entered into a different agreement – the MRA modified with a written "addendum" of his own creation that allowed him to charge additional fees in connection with the bankruptcy case, fees over and above the flat fee available under this district's flat fee arrangement.

Liou's modification of the MRA with this addendum violated the fundamental premise of the arrangement:  that the attorney and debtor enter into the MRA and *only* the MRA, and the attorney therefore receives a flat fee of $3,500 and *only* the flat fee for handling the entire case.  All of this is evident from the MRA itself.  It obligates the attorney to provide, not just the specific services listed, but "any other legal services necessary for the administration of the case."  (*See, e.g.,* Ex. A to Resp. Ex. 30).  It also declares that "[f]or all of the services outlined above, the attorney will be paid a fee of $3,500.00," permits additional fees only "[i]n extraordinary circumstances" (and with an additional application), and prohibits the attorney from receiving fees "directly from the debtor after the filing of the case."[11/] (*Id.*).  By repeatedly stating in fee applications that he and the debtor had entered into the MRA when in reality he

---

[11/]    The MRA contains a blank in which the attorney fills in the amount of the flat fee.  As the applicable local rule indicates, the flat fee is set separately by general order.  L.R. 5082-2(C)(1).  During the period at issue here, the flat fee for representing the debtor in the entire case was $3,000 in 2006 and the first four months of 2007 and $3,500 thereafter.  *See* Standing Order dated Sept. 28, 2005; Gen. Order No. 07-02 dated Apr. 26, 2007.  Only seven of the 317 cases here predate the $3,500 flat fee.

had modified critical terms, Liou misrepresented the facts and misled the court. *Cf. Mortakis*,

405 B.R. at 298 (finding that a fee agreement with charges for a "substantial number of extras"

beyond $3,500 deviated from the MRA, but writing off the misrepresentation in a single fee

application as a "typographical/proofreading error").

Liou, however, claims otherwise. He contends, first, that he did in fact enter into the

MRA in each case, and the representation in each form fee application was therefore "true in its

literal sense." (Liou Mem. at 2). Not so. Certainly, in each case Liou and the debtor signed the

document, and in no case did Liou and the debtor alter the document physically by inserting or

deleting terms on any of its pages. But the addendum Liou admits using in conjunction with the

MRA added terms that changed the compensation to which Liou was entitled in the bankruptcy

case. The addition of those terms in a separate document modified the MRA, making it a

different agreement, as much as if they had been written into the MRA's own margins. Having

added those terms, Liou could not truthfully represent to the court that he had entered into the

MRA. At best, the representation was a half-truth, and a half-truth "can be just as misleading,

sometimes more misleading, than an absolutely false representation." *Ronco*, 838 F.2d at 218.

Liou next contends that the MRA and the addendum were "separate" agreements. (Liou

Mem. at 2, 5; *see also* Tr. at 113). They were not. On the contrary, they constituted a single

agreement. Under Illinois law, instruments executed at the same time, by the same parties, for

the same purpose, and in the course of a single transaction are treated as one agreement and

construed together. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (2007). In all

but a few cases here, the MRA and addendum bore the same dates, suggesting they were

executed at the same time. They were executed by the same parties, Liou and the debtor. In all

but a few cases, they appear to have been executed in the course of a single transaction, the

-19-

debtor's retention of Liou.  And they were executed for the same purpose:  to memorialize

Liou's representation of the debtor and establish what his compensation would be.

Liou himself evidently believed the two documents constituted a single agreement.  He

titled the non-MRA document an "addendum," meaning "[a] thing that is added or is to be

added."  *Webster's Third New Int'l Dictionary* 24 (1981).  Liou's "addendum" here was "added"

to the MRA.  Not only did Liou use the title "addendum," but he ensured that each document

referred to the other.  In most cases, the MRA contained the phrase "see attached addendum."

(*See, e.g.,* Ex. A to Resp. Ex. 30).  As for the addendum, it began with three sentences discussing

"[t]his advance payment retainer agreement," a reference to the MRA (since the addendum was

not a retainer agreement of any kind).  (*See, e.g.,* Ex. B to Resp. Ex. 30).  It comes as no surprise,

then, that Liou's Rule 2016(b) statements in all 317 cases directed the curious to the "attached

Attorney Fee Agreement" (singular), not "Agreements" (plural).  (*See, e.g.,* Resp. Ex. 1).

Liou disagrees, insisting that the documents must be considered two agreements, not one,

because they had different purposes and subject matter.  According to Liou, the fees addressed in

the addendum were "unrelated to the administration of the Chapter 13 case."  (Liou Mem. at 5).

Liou is mistaken.  The addendum allowed Liou to tack on an 18% annual charge for late

payments of attorney's fees – fees generated in the bankruptcy case – increasing those fees in the

process.[12]  (Ex. B. to Resp. Ex. 30).  It allowed him to charge attorney's fees for "necessary

post-termination work," meaning fees resulting from the bankruptcy case (e.g., "drafting

itemizations of work performed") following the debtor's termination of Liou's representation.

---

[12]     It is unclear what a "late" payment could be, since nothing in the MRA or addendum set any kind of deadline.  But it is clear that Liou charged late fees.  In at least one case that another attorney filed involving a former Liou client, Liou filed a proof of claim for unpaid attorney's fees that included late fees.  (*See* Tr. at 142-145; Marshall Exs. 5-6)

(*Id.*).  It allowed him to charge attorney's fees at a $295 hourly rate for "services not specified in the Model Retention Agreement," services necessarily related to the bankruptcy case since the MRA only concerns the bankruptcy case.  (*Id.*).[13]  And it allowed him to charge "two hours of Attorney time" to prepare a motion to reopen the bankruptcy case if the case is closed without discharge because the debtor failed to file the certificates required under sections 109(h) or 111.[14]

The only reasonable conclusion is that Liou's addendum modified the MRA.  Because Liou represented to the court that he had entered into the MRA when in fact he had entered into a  different agreement, Liou's representations were false for purposes of Rule 9011(b)(3).

---

[13]    How there could be services in the bankruptcy case "not specified in the Model Retention Agreement" (Ex. B. to Resp. Ex. 30) is unclear, since the MRA requires the attorney to provide all "legal services necessary for the administration of the case" (Ex. A to Resp. Ex. 30).  Still, the only plausible interpretation of the addendum is that it was meant to enable Liou to charge additional attorney's fees for the case.  Liou's view that the provision referred to fees for services unrelated to the case ("probate matters" or "transfer[s] of . . . property" (Tr. at 107)) is not plausible.  As chapter 13 trustee Marshall correctly points out (Marshall Reply at 6-7), if this provision and the "post-termination" provision truly concerned non-bankruptcy services, they would not appear in a fee agreement for a bankruptcy case.

[14]    Liou admits these attorney's fees are related to the bankruptcy case but argues the MRA does not cover them.  (Liou Mem. at 5).  The flat fee, he says, covers services only through the closing of the case, and a motion to reopen a case necessarily is filed after the case is closed.  (*Id.* at 8).  Liou is right that the original version of the MRA referred to a flat fee for services "through case closing."  But the current version – as well as the versions Liou used in the cases here – does not.  It provides that the attorney will be paid the flat fee "[f]or all of the services outlined above," meaning the specified services as well as all "legal services necessary for the administration of the case." (Ex. A to Resp. Ex. 30).  The court has always interpreted the flat fee as a fee for the entire case.  *See* Standing Order dated Nov. 26, 2002  (describing flat fee as a fee for "the entire case"); Standing Order dated Sept. 28, 2005 (same); Gen. Order No. 07-02 dated Apr. 26, 2007 (describing flat fee as a fee for services through "the completion of the case"); Form Order No. 23b (awarding fees for "legal services through conclusion of the case").

### c.  Culpable Carelessness

The second requirement for sanctions under Rule 9011(b)(3) is also satisfied:  by stating falsely in scores of fee applications that he had entered into the MRA, Liou was "culpably careless."  *Young*, 404 F.3d at 39.

No reasonable attorney would have believed he was telling the truth in representing to the court he had entered into the MRA when the attorney had modified the MRA – which permits a single flat fee for the entire bankruptcy case – with an addendum requiring the debtor to pay additional fees.  The addendum produces a different agreement with different terms, terms different in a critical way.  The point of the flat fee arrangement is to set a "presumptively reasonable fee" that obviates the need for elaborate fee applications in routine cases.  *Geraci*, 138 F.3d at 321.  Modifying the MRA to authorize fees beyond the presumptively reasonable fee defeats the purpose of the arrangement.  The falsity of Liou's representations was more than just arguable.  It was obvious.  Any reasonable attorney would have recognized as much.

Liou nevertheless insists that his belief in the truth of his representations was reasonable.  He argues, first, that he consulted professional liability counsel, Sukowicz, who never told him using the MRA with the addendum raised any sort of ethical question.  (Liou Mem. at 10; *see also* Tr. at 75-77).

This argument is problematic for several reasons.  For starters, Liou did not consult Sukowicz about using the addendum with the MRA; he consulted him about using the addendum with other "customized" fee agreements.  (Tr. at 60-62, 64).  Although Liou made Sukowicz aware that he was using the MRA with the addendum, Liou never sought (and so presumably never received) advice from Sukowicz on whether his representations on his fee applications were truthful.  (*Id.* at 78).  Sukowicz's advice on this point would not have been helpful in any

event.  Sukowicz admitted he was not a bankruptcy attorney, had never practiced in the

bankruptcy court, and so had no understanding of the MRA's purpose or its role in the attorney

compensation process in chapter 13 cases.  (*Id.* at 77-78).

Even if Sukowicz had been knowledgeable on these subjects, moreover, and even if he

had advised Liou about the veracity of the fee applications, there is no ironclad "advice of

counsel" defense to Rule 9011 sanctions.  *See Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 n.4

(1st Cir. 1992); *In re Blue Pine Group, Inc.*, 448 B.R. 267, 274 (Bankr. D. Nev. 2010).  The

duties Rule 9011 imposes are nondelegable.  *Pavelic & LeFlore v. Marvel Entm't Group*, 493

U.S.120, 125 (1989); *Nunez*, 968 F.2d at 1426 n.4.  Although consultation with counsel may be

"an important step" in making a reasonable inquiry, "no amount of outside advice" can excuse a

statement a reasonable lawyer should know is false and misleading.  *Nunez*, 968 F.2d at 1426

n.4.

Liou next asserts that he used the addendum with the MRA "openly" for "several years"

without objection from "any Trustee, creditor or Court."  (Liou Mem. at 9, 14).  Therefore, he

says, he had no "intent to conceal or deceive."  (*Id.* at 14).

These assertions will not wash.  First, they are factually inaccurate.  As discussed earlier,

Liou did not use the MRA with the addendum "openly," in the sense that he started attaching

them to his Rule 2016(b) statements, until mid-2009.  But even if Liou had always filed the

MRA and addendum with his Rule 2016(b) statements, it would not absolve him of the

misstatements in his fee applications – to which the MRA was rarely attached and the addendum

never attached.  In ruling on fee applications in chapter 13 cases, this court relies on the

applications submitted, assuming, as Rule 9011(b)(3) entitles the court to assume, that the

representations they contain are true.  A lawyer cannot avoid sanctions for his false statements –

especially in a document on which he should expect the court to rely – because he disclosed the truth elsewhere in the record. A court has no obligation to test an attorney's representations by scouring the record for contradictory material.[15/]

Second, Liou's assertions are legally irrelevant. Again, an attorney's Rule 9011 obligations are non-delegable. *Pavelic & LeFlore*, 493 U.S. at 125. An attorney has a personal responsibility to ensure he tells the court the truth. So it makes no difference that no one pointed out to Liou he being less than truthful. As for Liou's claimed lack of intent to mislead, the test under Rule 9011 is objective, not subjective. *Senese*, 237 F.3d at 824 n.2. So it makes no difference what Liou believed or did not believe, what he intended or did not intend. If no reasonable lawyer would have thought Liou's representations were true – and no reasonable lawyer would have – the "pure heart" he claims is beside the point. *Thornton*, 787 F.2d at 1154.

Finally, Liou contends that the court's General Order 11-2 issued in March 2011 confirms the reasonableness of his belief that his statements were true. (Liou Mem. at 10). According to Liou, the General Order imposed a new prohibition, demonstrating that the court itself "did not come to the conclusion" Liou's conduct was impermissible until recently. (*Id.* at 11).

Liou could not be more mistaken. Some amendments to statutes and rules clarify rather than change existing law. *See Middleton v. City of Chicago*, 595 F.3d 655, 663 (7th Cir. 2009). As trustees Marshall and Vaughn correctly observe (Marshall Reply at 10; Vaughn Reply at 4),

---

[15/]    Liou argues that a 2004 announcement on the court's web site instructed lawyers not to file the MRA. (Tr. at 16-18). True. But the point is not that Liou violated any statute or rule in failing to file the MRA and addendum. The point is simply that until he began filing them in mid-2009, no one could have known, even after an investigation of the kind a court has no obligation to conduct, that he had modified the MRA with the addendum and thus that his representations about the MRA in his fee applications were false.

the prohibition in General Order 11-2 on altering the MRA or on entering into an agreement other than the MRA imposed no new requirements. It simply codified what had always been the court's understanding of its flat fee arrangement. General Order 11-2 was prompted by Liou's transgressions here and was designed to provide an immediate clarification to the bar until Local Rule 5082-2 could be amended. *Cf. Hardin Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 638 (7th Cir. 1992) (noting that an amendment is more likely intended as a clarification when statutory meaning has been the "subject of recent controversy"). The necessary amendment has been proposed and is pending.

Because Liou not only made factual misstatements in his fee applications but reasonably should have known his statements were indeed misstatements, he violated Rule 9011(b)(3).

### d.  Sanctions

The remaining question is the appropriate sanction. Sanctions for violations of Rule 9011 may be both monetary and non-monetary but must "be limited to what is sufficient to deter repetition of [the attorney's] conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2); *Sullivan-Moore*, 406 F.3d at 471. In arriving at a sanction, the court should "reflect upon equitable considerations." *Brown v. Federation of State Med. Bds.*, 830 F.2d 1429, 1439 (7th Cir. 1987). These include (but are not limited to) whether the misconduct was part of a pattern, whether the attorney has engaged in similar conduct in other litigation, what effect the misconduct had on the litigation process, whether the attorney is experienced in the area of law, and whether the conduct was willful or negligent. Fed. R. Civ. P. 11 advisory committee's note (1993); *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001); *Brown*, 830 F.2d at 1439. A court enjoys broad discretion in determining the appropriate sanction. *Sullivan-Moore*, 406 F.3d at 471 (noting a trial court's "wide latitude").

The equitable considerations here point to a severe sanction.  Liou's misrepresentations to the court were quite serious, far worse than simply checking the wrong box on a bunch of forms.  In this district, an attorney's representation on his fee application that he has entered into the MRA with the debtor entitles him to the court's flat fee and exempts him from the onerous task of itemizing his services, a task that section 330(a) of the Bankruptcy Code otherwise requires.  In telling the court he had entered into the MRA when in fact he had modified the MRA with the addendum, Liou was able to avoid itemizing his services and still collect more than the flat fee.  Had Liou wanted more than the flat fee, he could always have entered into a different fee agreement and submitted the necessary itemization.  Instead, he chose to game the system.  Conduct like Liou's inflicts "significant trauma . . . on the judicial system." *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 456 (7th Cir. 1987) (Ripple, J., concurring in part and dissenting in part).

Not only were the misrepresentations serious, but Liou engaged in a long pattern of them.  In at least 317 cases over nearly four years, he filed fee applications stating that he had entered into the MRA when he had not.  It could be argued, of course, that since Liou made the same misrepresentation mechanically in each case, the pattern is less damning.  But this is not the first time Liou has been less than honest with the court in his fee practices.  In 2009, he was sanctioned three times, twice in published opinions, for filing misleading Rule 2016(b) statements, among other things.  *See Nelson*, 424 B.R. at 365-68 (sanctioning Liou and ordering disgorgement of fees for filing a misleading Rule 2016(b) statement, using an unclear fee agreement, and charging excessive fees); *In re Hunt*, No. 09 B 24041, 2009 WL 3571261, at *1 (Bankr. N.D. Ill. Oct. 30, 2009) (same); *Jackson*, 401 B.R. at 339-41 (sanctioning Liou and ordering disgorgement of fees for engaging in a pattern of filing false Rule 2016(b) statements).

Liou unquestionably should have known better.  He has represented debtors in chapter 13

bankruptcies for almost fifteen years and is a regular practitioner in this court.  *See Jackson*, 401

B.R. at 336.  His practice of modifying the MRA with an addendum was not only inconsistent

with the basic principle underlying the court's flat fee arrangement but plainly so.  If, as he now

says, he did not actually intend to conceal anything or mislead anyone, he should certainly have

realized that was the effect.  The call is not even a close one.  All told, Liou's moral compass

badly needs repair.

For his part, Liou suggests several reasons he believes weigh in favor of a lighter

sanction, but none is persuasive.  Liou notes again that he consulted his professional liability

counsel, Sukowicz, in an effort to comply with his obligations.  Although reliance on counsel is

not usually relevant to the question of whether there has been a Rule 9011 violation, it can be

relevant to the sanction itself.  *Nunez*, 968 F.2d 1426 n.4.  The problem for Liou is that the

record shows he consulted Sukowicz about fee agreements other than the MRA.  He never

sought Sukowicz's advice about using the MRA with the addendum and then representing on his

fee applications that he had entered into the MRA, the specific violation here.  Liou gets no

points for consulting counsel over a different ethical problem.

Liou also asserts again that he did not intend to mislead anyone – another factor relevant

to the extent of the sanction if not to the fact of a violation.  *See* Fed. R. Civ. P. 11 advisory

committee's note (1993).  There is at least some evidence that Liou might not have meant to

mislead the court, since he at least began attaching the MRA and addendum to his Rule 2016(b)

statements in mid-2009.  But he deserves little credit for his claimed lack of intent.  Whatever he

attached to *some* of the Rule 2016(b) statements, he misrepresented the facts in *all* of the fee

applications.  No reasonable attorney, let alone a bankruptcy attorney of Liou's experience,

-27-

could possibly have believed those representations were true.  His misrepresentations were not just negligent, they were grossly negligent.

Finally, Liou asks to be recognized for "taking corrective action."  (Liou Mem. at 12). After the December 2010 show cause order suggested his conduct was sanctionable, Liou says he amended the MRAs and withdrew and then refiled any pending fee applications.  (*Id.*).  But Liou's "corrective action" was half-hearted at best.  He filed amended MRAs in only thirty-three cases and withdrew fee applications in only eighteen.  In several instances, moreover, Liou added insult to injury by committing yet another set of Rule 9011 violations.  Ten of the thirty-three amended MRAs were not true amendments at all but, as described earlier, simply had the word "amended" added to the title and the phrase "see attached addendum" scratched out.  The debtors in these cases evidently never saw, let alone signed, the amended agreements.  There is no such thing in Illinois law as a unilateral contract amendment, *Robinson v. Ada S. McKinley Comty. Servs., Inc.*, 19 F.3d 359, 363 (7th Cir. 1994), as Liou surely knew.  His representations that he and the debtors in these cases had entered into "amended" MRAs were no more true than his representations that he and the debtors had entered into MRAs in the first place.

With the foregoing considerations in mind, the court will impose the following sanctions on Liou for his violations of Rule 9011(b)(3):

• Liou will be fined $10,000, the fine payable to the clerk of the bankruptcy court pursuant to Rule 9011(c)(2).  Fed. R. Bankr. P. 9011(c)(2); *see Vollmer*, 248 F.3d at 711 n.11. This amount is enough to have at least some deterrent effect despite the dearth of evidence on Liou's ability to pay (no evidence was offered).[16]  Even if the 317 violations here were treated as

---

[16]     The concern is not that the fine is too large – if an attorney collected all possible fees in 317 chapter 13 cases with fees awarded at the $3,500 flat rate, he would gross more than $1.1 million – but rather that the fine is too small.

one violation, a fine of this size would still be in line with the admonition of the court of appeals

that "absent extraordinary circumstances" fines imposed sua sponte "are generally limited to

several thousand dollars." *Vollmer v. Selden*, 350 F.3d 656, 663 (7th Cir. 2003).

 &bull; Liou will be ordered to attend and complete successfully a course in legal ethics at an

accredited law school. *See* Fed. R. Civ. P. 11 advisory committee's note (1993) (noting that

sanction may require "participation in seminars or other educational programs"); *see, e.g.,*

*Sullivan-Moore*, 406 F.3d at 471-72 (affirming sanction requiring firm's attorneys to attend a

civil procedure course); *Kenner v. Department of Army*, 136 F.R.D. 140, 151 (M.D. Tenn. 1991)

(requiring attorney to complete legal ethics course), *aff'd without op.*, 956 F.2d 269 (6th Cir.

1992); *Shodeen v. Petit (In re Burghoff)*, 374 B.R. 681, 686-87 (Bankr. N.D. Iowa 2007)

(requiring remedial coursework in legal ethics for attorney who appeared not to appreciate that

his conduct was "inappropriate").

 &bull; This opinion will be published.  The opinion will serve as the court's formal censure of

Liou for his misconduct.. *See* Fed. R. Civ. P. 11 advisory committee's note (1993) (noting that

sanctions may include "issuing an admonition, reprimand, or censure"); *see also United States v.*

*Clark*, ___ F.3d ___, ___, 2011 WL 4336663, at *7 (7th Cir. Sept. 15, 2011) (explaining that

censure is "a more opprobrious sanction than a reprimand or admonishment" (internal quotation

omitted)).

 &bull; Copies of this opinion will be forwarded to the Executive Committee of the U.S.

District Court and to the ARDC for whatever disciplinary action those bodies deem appropriate.

*See* Fed. R. Civ. P. 11 advisory committee's note (1993) (noting that sanctions may include

"referring the matter to disciplinary authorities").

### 4.  Conclusion

For these reasons, the court finds that attorney Timothy K. Liou made false statements of fact in fee applications in 317 chapter 13 cases in violation of Bankruptcy Rule 9011(b)(3). Pursuant to Bankruptcy Rule 9011(c), Liou is accordingly sanctioned as follows:

a.  Liou is ordered to pay to the clerk of the bankruptcy court a fine of $10,000.  Payment is due no later than 30 days from the date of this opinion.

b.  Liou is ordered to attend and complete successfully a course in legal ethics at an accredited law school.  The course must be completed before January 1, 2013.  A letter from the course instructor attesting to Liou's successful completion of the course must be filed with the court in the above-captioned case.

c.  Liou is censured for his misconduct.

d.  Copies of this opinion will be forwarded to the Executive Committee of the U.S. District Court and to the ARDC for those bodies to consider disciplinary action.

A separate order consistent with this opinion will be entered.

Dated:   September 29, 2011

A. Benjamin Goldgar
United States Bankruptcy Judge

## APPENDIX

| Debtor(s) | Case No. | Debtor(s) | Case No. |
|-----------|----------|-----------|----------|
| Brent | 06 B 6197 | Tandy | 08 B 9969 |
| Billig | 06 B 13310 | Carter | 08 B 10660 |
| Stanford | 07 B 385 | Zuno | 08 B 10669 |
| Bryja | 07 B 386 | Jackson | 08 B 11479 |
| White | 07 B 1241 | Orozco | 08 B 11480 |
| Coleman | 07 B 4454 | Woodfork | 08 B 12160 |
| Gruver | 07 B 7396 | Williams | 08 B 12163 |
| Brickhouse | 07 B 8023 | Logan | 08 B 13521 |
| Valencia | 07 B 9645 | Degrane | 08 B 13654 |
| Miller | 07 B 10051 | Kline | 08 B 14126 |
| Avilez | 07 B 10932 | Jordan | 08 B 14273 |
| Glenn | 07 B 11368 | Holloway | 08 B 14275 |
| Strong | 07 B 11528 | Hugan | 08 B 14863 |
| Styles | 07 B 11911 | Corey | 08 B 16304 |
| Brooks | 07 B 12254 | Brown | 08 B 17533 |
| Dominguez | 07 B 12715 | Ward | 08 B 17658 |
| Johnson | 07 B 14152 | Graham | 08 B 18807 |
| Harrison | 07 B 14775 | Center | 08 B 19582 |
| Norvell | 07 B 16117 | Simmons | 08 B 19593 |
| Jones | 07 B 16501 | Thompson | 08 B 19599 |
| Slaughter | 07 B 17487 | Lockett | 08 B 19604 |
| Crawford | 07 B 18001 | Stein | 08 B 20437 |
| Lewis | 07 B 18521 | Gill | 08 B 21752 |
| Cox | 07 B 21214 | Welter | 08 B 22833 |
| Lane | 07 B 20126 | Cuascut | 08 B 23850 |
| Porter | 07 B 21659 | Mannie | 08 B 24760 |
| Thomas | 07 B 22146 | Johnson | 08 B 24766 |
| Anderson | 07 B 23280 | Bess | 08 B 25304 |
| Williams | 07 B 23782 | Kay | 08 B 26826 |
| Lenior | 08 B 1385 | Peake | 08 B 27050 |
| Phillips | 08 B 3116 | Jones | 08 B 27534 |
| Gayles | 08 B 3147 | Delgado | 08 B 28330 |
| Olson | 08 B 3155 | Zamora | 08 B 28332 |
| Shuttlesworth | 08 B 3583 | Ticey | 08 B 28337 |
| Robinson | 08 B 3587 | Jackson-Foster | 08 B 28343 |
| Atwood | 08 B 3967 | Banks | 08 B 29167 |
| Radcliff | 08 B 5795 | Jennings | 08 B 29171 |
| Lopez | 08 B 5796 | Cressler | 08 B 29175 |
| Boyd | 08 B 5797 | Gross | 08 B 30010 |
| Delaney | 08 B 8075 | Leenheer | 08 B 30645 |
| Boone | 08 B 9318 | Jackson | 08 B 32679 |
| Alexander | 08 B 9966 | Valdellon | 08 B 32681 |

| **Debtor(s)** | **Case No.** | **Debtor(s)** | **Case No.** |
|---|---|---|---|
| Quinn | 08 B 33623 | Brown | 09 B 26406 |
| Holt | 08 B 33625 | Mathews | 09 B 26409 |
| Hibbler | 08 B 35109 | Curd | 09 B 27447 |
| Turner | 08 B 72659 | Holloway-Cole | 09 B 27507 |
| Brickhouse | 09 B 244 | Ramos | 09 B 27528 |
| Santiago | 09 B 636 | Rodriguez | 09 B 27850 |
| Johnson | 09 B 638 | Davis | 09 B 28619 |
| Chatman | 09 B 806 | Campbell | 09 B 28631 |
| Wilson | 09 B 1552 | Negron | 09 B 28632 |
| Torres | 09 B 1565 | Delgado | 09 B 28633 |
| Diggs | 09 B 1845 | Cage | 09 B 30357 |
| Brown | 09 B 2386 | Carson | 09 B 30358 |
| Alexander | 09 B 2787 | Whitaker | 09 B 31267 |
| Spencer | 09 B 3421 | Garner | 09 B 31291 |
| Hill | 09 B 3429 | Heard | 09 B 31295 |
| Poore | 09 B 3828 | Cross | 09 B 31300 |
| Adams | 09 B 5061 | Mitchell | 09 B 31302 |
| Joiner | 09 B 5080 | Romero | 09 B 31305 |
| Myers | 09 B 5099 | Smith | 09 B 31493 |
| Worrell | 09 B 5251 | Acosta | 09 B 32638 |
| Jenkins | 09 B 5907 | Booth | 09 B 32640 |
| Lynumn | 09 B 7347 | Vauters | 09 B 33484 |
| Gilmore | 09 B 8019 | Lopez | 09 B 34180 |
| Ruiz | 09 B 8042 | Watkins | 09 B 35405 |
| Holthouse | 09 B 11133 | Lewis | 09 B 35940 |
| Clark | 09 B 14275 | Holmes | 09 B 36315 |
| Dunbar | 09 B 15320 | Johnson | 09 B 36919 |
| Griffin | 09 B 15326 | Butler | 09 B 37152 |
| Harris | 09 B 16425 | McPherson | 09 B 37603 |
| Avrett | 09 B 17006 | Diehl | 09 B 38218 |
| Brooks | 09 B 17363 | Johnson | 09 B 38220 |
| Ansong | 09 B 17400 | Phillips | 09 B 38224 |
| Brown | 09 B 18018 | Brocks-Garrett | 09 B 38285 |
| Soroka | 09 B 18025 | Osborne | 09 B 38921 |
| Brown | 09 B 20177 | Gray | 09 B 39325 |
| Sampson | 09 B 21034 | Battle | 09 B 40441 |
| Simmons | 09 B 21167 | Asque | 09 B 40457 |
| Taylor | 09 B 21285 | Tate | 09 B 40488 |
| Chisholm | 09 B 21874 | Vazquez | 09 B 40490 |
| Yim | 09 B 21890 | Cedeno | 09 B 41766 |
| Chambers | 09 B 21895 | Michaud | 09 B 41791 |
| Depakakibo | 09 B 21898 | Hendrickson | 09 B 41793 |
| Coleman | 09 B 22881 | Savage-Caffey | 09 B 41810 |
| Hawkins | 09 B 24699 | Wells | 09 B 42551 |

| Debtor(s) | Case No. | Debtor(s) | Case No. |
|-----------|----------|-----------|----------|
| Bultema | 09 B 42595 | Cardenas | 10 B 10147 |
| Clarke | 09 B 43608 | Currie | 10 B 10154 |
| Handler | 09 B 43615 | Smith | 10 B 10157 |
| Zielske | 09 B 43621 | Lyons | 10 B 10361 |
| Cardova | 09 B 43805 | Meza | 10 B 10783 |
| Walker | 09 B 43807 | Caldwell | 10 B 11432 |
| Gomez-Rivera | 09 B 44995 | Brown | 10 B 11433 |
| Painter | 09 B 46344 | Raga | 10 B 11436 |
| Toscano | 09 B 46349 | Carter | 10 B 11437 |
| Coleman | 09 B 47426 | Morales | 10 B 12548 |
| Maldonado | 09 B 47427 | Rogers | 10 B 12919 |
| Booker | 09 B 47429 | Edwards | 10 B 13990 |
| Vasquez | 09 B 47430 | Cuevas | 10 B 13992 |
| Forney | 09B 47431 | Brownlee | 10 B 14570 |
| Alexander | 09 B 47437 | Franklin | 10 B 15254 |
| Smith | 09 B 47438 | Hughes | 10 B 15867 |
| Aguilar | 09 B 48496 | Ramirez | 10 B 16409 |
| Henry | 09 B 49083 | Lewis | 10 B 16410 |
| Chaidez | 09 B 49086 | Cosmas | 10 B 16411 |
| Williams | 09 B 49093 | Robanser | 10 B 16880 |
| Williams | 10 B 35 | Steels | 10 B 17627 |
| Isakovic | 10 B 260 | Gnassounou | 10 B 17629 |
| Kenney | 10 B 986 | Love | 10 B 17642 |
| Simmons | 10 B 1037 | Moye | 10 B 17645 |
| Brown | 10 B 1961 | Adamore | 10 B 17655 |
| Maturo | 10 B 2165 | Porter | 10 B 21376 |
| Santiago | 10 B 2198 | Marcondes | 10 B 22541 |
| Moser | 10 B 2872 | Mendoza | 10 B 22542 |
| Cooper | 10 B 2883 | Simelton | 10 B 22771 |
| Nwaokai | 10 B 4071 | Carstens | 10 B 23825 |
| Echevarria | 10 B 4079 | Taylor | 10 B 23829 |
| Moss | 10 B 4090 | Vilchez | 10 B 23830 |
| Zaragoza | 10 B 4105 | Steele | 10 B 23832 |
| Contreras-Bernal | 10 B 4904 | Roberson | 10 B 24416 |
| Dace | 10 B 4913 | Bautista | 10 B 25044 |
| Bates | 10 B 4949 | Edwards | 10 B 25046 |
| Mein | 10 B 5129 | Smith | 10 B 26099 |
| Evans | 10 B 6098 | Wilcher | 10 B 26248 |
| Chauca | 10 B 7117 | Suing | 10 B 27176 |
| Lomeli | 10 B 7123 | Jennison | 10 B 27959 |
| Estafanous | 10 B 7125 | Salinas | 10 B 27961 |
| Conner | 10 B 8779 | Powell | 10 B 28040 |
| Crump | 10 B 8817 | McMullen | 10 B 29110 |

| **Debtor(s)** | **Case No.** | **Debtor(s)** | **Case No.** |
|---|---|---|---|
| Adams | 10 B 29201 | Calderon | 10 B 45588 |
| White | 10 B 29826 | O'Connor | 10 B 46830 |
| Ford | 10 B 30250 | Chindamanee | 10 B 46835 |
| Cliff | 10 B 30256 | Alford | 10 B 47019 |
| Richardson | 10 B 31199 | Ramos | 10 B 47042 |
| Maldonado | 10 B 32258 | Serafin | 10 B 49342 |
| Parker | 10 B 32259 | Moffett | 10 B 50203 |
| Valladares | 10 B 32264 | Holmes | 10 B 50204 |
| Bakenne | 10 B 32265 | Hodel | 10 B 50212 |
| Becker | 10 B 33368 | Gray | 10 B 50220 |
| Hammond | 10 B 33370 | Trineka | 10 B 50574 |
| Nix | 10 B 33371 | Simmons | 10 B 51650 |
| Chavez-Lopez | 10 B 34532 | Johnson | 10 B 52261 |
| Nash | 10 B 34534 | Hall | 10 B 52296 |
| Bluford | 10 B 34674 | Taylor | 10 B 54618 |
| Geronimo | 10 B 35806 | | |
| Ellis | 10 B 36834 | | |
| Delgado | 10 B 37398 | | |
| Iniquez | 10 B 37403 | | |
| Henley | 10 B 38475 | | |
| Simoulis | 10 B 38514 | | |
| Nevarez | 10 B 38802 | | |
| Pardo | 10 B 39398 | | |
| Barnett | 10 B 39405 | | |
| Neuman | 10 B 40233 | | |
| Love | 10 B 40266 | | |
| Porter | 10 B 40724 | | |
| Mitchell | 10 B 40977 | | |
| Covington | 10 B 42277 | | |
| Jackson | 10 B 42289 | | |
| Scott | 10 B 42436 | | |
| Mills | 10 B 43449 | | |
| Nailon | 10 B 43450 | | |
| Johnson-Randle | 10 B 43451 | | |
| Scott | 10 B 43453 | | |
| Fargo | 10 B 43457 | | |
| Cooper | 10 B 43459 | | |
| Kelso | 10 B 43461 | | |
| Gonzalez | 10 B 43755 | | |
| Hooper | 10 B 44747 | | |
| Hernandez | 10 B 44748 | | |
| Griffin | 10 B 44749 | | |
| Mack | 10 B 44909 | | |